UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALBERT KELLY WEBB,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN ENGLISH, et al.,<br><br>Defendants. | CAUSE NO. 3:24-CV-1000-CCB-AZ |

**OPINION AND ORDER**

Albert Kelly Webb, a prisoner without a lawyer, filed an amended complaint (ECF 14) after the court screened his original complaint and determined it failed to state any claims. *See* ECF 13. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Webb alleges he was playing basketball in the gymnasium at the Miami Correctional Facility on August 3, 2023, when he "slipped in a puddle of water that accumulated due to roof leakage in the region of the basketball court." ECF 14 at 3. He remained on the floor for ten to thirty minutes "screaming in pain" because there were no staff members "in sight." *Id*. He claims that "someone eventually got in

communication with custody staff," but no one came to his aid. *Id*. Another inmate ended up going to the medical staff building and brought Webb a wheelchair. No one there questioned why a wheelchair was necessary. Because the wheelchair was broken and Webb's patellar tendon was torn, it was "impossible" for him to get into the wheelchair. *Id*. at 4. Webb continued to scream and fight with the inmates who were trying to force him into the wheelchair. Finally, a "yard staff" worker arrived on the scene. Webb claims this made things worse because the staff worker also tried to force him into the broken wheelchair and "threatened that they [would] taze and spray me with there (sic) pepper spray" if he didn't comply. *Id*. A medical signal was called, and "medical staff" came and put him on a stretcher. *Id*. Webb was then transported by ambulance to the emergency room where he received treatment for his injuries.

On August 14, 2023, while pushing Webb in his wheelchair upon discharge, Officer Becker allegedly "ran [him] into a concrete pillar directly in front of the doors of the hospital." *Id*. at 5. This caused Webb's left leg to fall down and hit the ground at a slightly bent angle. Officer Becker continued to push the wheelchair "a few more steps" as Webb "screamed to get him to stop." *Id*. This caused Webb "severe pain." *Id*. When he stopped, he "carelessly" lifted Webb's leg back onto the wheelchair. *Id*. Webb begged Officer Becker to take him back inside the hospital to get his leg checked out, but Officer Becker refused because it was his "day off" and he had "things to do." *Id*.

On September 9, 2023, Webb was scheduled for a follow-up visit at the same outside hospital. Sergeant Lambert was in charge of the transport and utilized a non-wheelchair accessible vehicle. Webb was handcuffed and chained. Sergeant Lambert

forced Webb to get out of his wheelchair and "limp and climb into the back seat area." *Id*. at 6. Webb claims this violated medical orders which stated he was to have "no weight bearing to left leg." *Id*. Webb remained shackled, with no seatbelt on, during the transport. His left leg was "barely on the seat," and he was jostled around "like a ping pong ball for 20 minutes there and back causing tremendous pain." *Id*. When they arrived back at the prison, Webb asked Medical Staff Megan Reese why a wheelchair van wasn't scheduled for the transport, and she replied that Sergeant Lambert had purposefully switched him with a non-wheelchair bound inmate.

Webb also complains about the general medical care he received in the infirmary from August 8, 2023, until mid-November 2023. He alleges the "medical staff" would drop his injured leg onto the ground as he was moved in and out of his bed which caused "severe pain." *Id*. at 8. The medical staff rarely helped him wash his lower leg area or get in and out of bed despite the doctor's orders. Webb claims, "It was always excuses why they couldn't help and when I would make complaints it would always be some type of vindictive retaliatory act." *Id*. Webb attempted to file grievances, but they "mysteriously disappeared." *Id*. He asserts that all of the issues are "a result on how Medical Director Lee Ann Ivers allow[s] us to be mistreated." *Id*.[1]

On November 15, 2023, Webb was scheduled to see another outside doctor about his knee. He was escorted to a room by the "infirmary officer" to be "stripped out and

[1] He claims the following nurses "hurt" him while he was in the infirmary: Betty (CNA), Don (Male Nurse), Jamie, and Dommi African Nurse." ECF 14 at 8. However, he doesn't name any of these individuals as defendants.

patted down to leave the facility," which had never happened before. *Id*. at 9. Then, when Officer Beckner and another officer with a gun arrived, they decided he needed to be stripped down again. Upon completion of the strip search, Officer Beckner and the officer with the gun started to put chains and handcuffs on Webb. Webb informed them his wrist had been injured in the fall. In the past, other officers had communicated directly with medical staff, and his wrist had been accommodated accordingly. This time, Officer Beckner said he needed to ask his sergeant first. After discussion with Sergeant Lambert, Officer Beckner refused the request. Webb believes this was in retaliation for filing grievances and for "threaten[ing]'" to file a lawsuit against them. *Id*. Webb states, "I was not comfortable leaving the grounds of the prison with an armed mystery man and a careless, overweight, irresponsible officer that done already severely hurt me once," so he refused to leave. *Id*. at 10. Webb assumed his doctor appointment would be rescheduled, but "they never allowed me to go on another trip." *Id*. He states, "I don't believe my knee healed properly and I now walk with a horrible limp." *Id*. His leg buckles when he ambulates, and he remains in pain.

Finally, Webb complains about his physical therapist, Nathan W. Bates. Webb says he "begged" Therapist Bates to order him another knee brace in April 2025, but he refused based on documentation in his medical file from November 2024—including a document indicating Webb himself said he didn't need the brace. *Id*. at 11. Webb alleges "he or other staff" forged that document and lied about other incidents. Webb states, "Nathan has dealt with me several times over the years and he has done nothing to ever help me with any injury I sustained while being at Miami Correctional Facility other

than cop a feel and have a 10-15 minute conversation about sports." *Id*. Because of this, Webb has refused his assistance "since he started lying." *Id*. Webb has sued Warden Brian English, Supervisor Leann Ivers, Sergeant Lambert, Officer Becker, and Physical Therapist Nathan Bates for monetary damages. He also seeks injunctive relief "[t]o allow plaintiff to go back to original Dr and figure out why I'm in pain." *Id*. at 12.

*I. Deliberate Indifference - Conditions*

Webb believes the defendants were deliberately indifferent to the conditions of his confinement before, during, and after his fall. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id*. at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)

(citation omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state a constitutional claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 615.

Webb alleges a leaky roof in the gymnasium caused him to slip and fall. However, as explained in the court's prior screening order, a fall caused by exposure to wet floors generally does not amount to an Eighth Amendment violation. *Pyles*, 771 F.3d at 410 ("slippery surfaces . . . without more, cannot constitute a hazardous condition of confinement"); *Perkins v. Atrisco*, No. 3:22-CV-1052-DRL-JEM, 2023 WL 2346275, at *2 (N.D. Ind. Mar. 2, 2023) ("[F]ederal courts are consistent in holding that slip-and-fall incidents, whether on ice, water, or slippery floors, do not meet the deliberate indifference standard of Eighth Amendment conditions of confinement claims."). Sometimes there are extenuating circumstances that transform a slip and fall into an Eighth Amendment violation, but Webb hasn't described any such circumstances here. *See Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016); *Balle v. Kennedy*, 73 F.4th 545 (7th Cir. 2023). Although he alleges the Warden kept the

recreation building open "knowing the possible dangers of a leaky roof" in general, this isn't sufficient to subject the Warden to individual liability for Webb's fall, especially since the amended complaint doesn't allege facts plausibly suggesting the Warden had knowledge of any prior incidents or a specific risk to Webb.[2] *See Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) ("judged subjectively, the prison official must have actual, and not merely constructive, knowledge of the risk"). This claim will be dismissed.

Webb claims he remained on the floor for ten to thirty minutes after the fall. However, he doesn't plausibly allege any of the named defendants played a part in that delay or even witnessed the incident. *See Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); *see also Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("[T]he division of labor is critical to the efficient functioning of the [prison] organization."); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (There is no general respondeat superior liability under 42 U.S.C. § 1983.). This claim will be dismissed.

Webb asserts that, following the initial care he received at the hospital, Officer Becker pushed his wheelchair into a pillar on August 14, 2023, dragged his injured leg along the ground for several steps which caused severe pain, and then refused to let Webb be reevaluated by medical professionals at the hospital because he had other

---

[2] In fact, Webb stated in his original complaint that "no work orders had been either submitted nor completed by the maintenance staff concerning the leaky roof . . .." ECF 1-3 at 6.

things to do. While mere negligence does not violate the Constitution, the court will give Webb the benefit of all reasonable inferences at this early stage and allow him to proceed on an Eighth Amendment claim against Officer Becker for being deliberately indifferent to his needs. Similarly, he claims Sergeant Lambert deliberately switched his mode of hospital transport to a non-wheelchair accessible vehicle on September 9, 2023, which caused Webb extreme pain to his injured leg both when loading into the van and during the ride to the hospital. He claims Sergeant Lambert knew this violated medical orders yet did it anyway. These allegations are sufficient to state a plausible claim for deliberate indifference against Sergeant Lambert as well.

*II. Deliberate Indifference - Medical Claims*

Webb asserts several defendants were deliberately indifferent to his medical needs following his initial injury. Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas*, 2 F.4th at 722. To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton*, 44 F.4th at 615 (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth*, 960 F.3d at 425–26.

Webb complains generally about the care he received from the "medical staff" in the infirmary from August 8, 2023, until mid-November 2023. But he doesn't attribute any specific actions to any of the named defendants, and his assertion that Medical Director Ivers "allow[s]" inmates to be mistreated isn't sufficient to subject her to liability. *See Moderson*, 137 F.4th at 617 ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)*; Burks,* 555 F.3d at 594 (there is no general respondeat superior liability under 42 U.S.C. § 1983); *see also Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations marks and citations omitted)); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")). These claims will be dismissed.[3]

[3] Webb seeks injunctive relief to "go back" to the original doctor to determine why he is in pain. As described in the facts section above, he alleges only that he received deficient care while in the infirmary from August to November of 2023, that he was not rescheduled to see the outside doctor after he refused to go to his appointment with Officer Becker on November 15, 2023, and that he had issues with his physical therapist in November 2024 and April 2025. He says he has a limp and that his leg buckles when he walks. However, he doesn't provide sufficient details about the medical care he has received (or failed to receive) since then, including whether he has made additional requests to be seen and treated. The bulk of his allegations focus on events that occurred in 2023—the facts regarding his current medical care are simply too sparse and too remote from his earlier allegations to state a plausible claim for injunctive relief. *See, e.g., Taha*, 947 F.3d at 469; *Schillinger*, 954 F.3d at 994.

Next, Webb claims his physical therapist, Nathan W. Bates, declined to order him another knee brace in April of 2025 because Webb had allegedly refused one in late November of 2024, more than a year after his injury and the events that initiated this lawsuit occurred. Webb says the refusal, which was documented in contemporaneous medical records, was fabricated. Therapist Bates was not named as a defendant or mentioned in Webb's original complaint, and Webb doesn't explain how these allegations are related to his current claims. "A prisoner may join defendants in the same action only if the claims against each 'aris[e] out of the same transaction, occurrence or series of transactions or occurrences.'" *Thompson v. Bukowski*, 812 Fed. Appx. 360, 363 (7th Cir. 2020) (quoting Fed. R. Civ. P. 20(a)(2)(A)). "Unrelated claims against different defendants belong in different suits." *George,* 507 F.3d at 607. The Seventh Circuit Court of Appeals has repeatedly urged district courts to "be alert" to the issue of unrelated claims. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). In *Owens*, the court "warned that district courts should not allow inmates to flout the rules for joining claims and defendants, *see* Fed. R. Civ. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Id*. The fact that Webb suffered a slip and fall in August of 2023 and had issues with the defendants being deliberately indifferent to his needs in the subsequent several months isn't sufficiently related to his allegations against a different defendant

about the denial of a brace and the lack of physical therapy a year later. The claims against Therapist Bates will be dismissed.[4]

*III. First Amendment - Retaliation*

Finally, Webb alleges Officer Becker and Sergeant Lambert retaliated against him before one of his initial follow-up visits in November 2023. Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). While these basic elements remain the same whether the plaintiff is a prisoner or a non-prisoner, the details of each element may depend on the context. *Id*. In the prison context, written requests for interviews and/or grievances clearly constitute First Amendment protected activity. *Id.*; *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) ("A prisoner has a First Amendment right to make grievances about conditions of confinement."). That said, "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Clark v. Reed*, 772 Fed. Appx. 353, 355 (7th Cir. 2019) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (emphasis in original)). Additionally, not all

[4] If Webb believes he has a separate claim against Therapist Bates about the lack of physical therapy and/or the denial of a brace, nothing prevents him from filing a new lawsuit subject to the fees and other requirements of the Prison Litigation Reform Act.

actions alleged to be retaliatory are "actionable in and of themselves . . .." *Bridges*, 557 F.3d at 552. Rather, only "if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Id*.

Webb claims he was unnecessarily strip-searched twice in preparation for a follow-up doctor visit on November 15, 2023. He also says Officer Becker and Sergeant Lambert refused to adjust his restraints on his injured wrist, which caused him pain. He believes they did this in coordination and because he had filed grievances against them.[5] Although these allegations are sparse, the court will give Webb the benefit of all reasonable inferences at this early stage and allow him to proceed against these defendants on First Amendment retaliation claims.

For these reasons, the court:

(1) **GRANTS** Albert Kelly Webb leave to proceed against Officer Becker in his individual capacity for compensatory and punitive damages for being deliberately indifferent to his needs in violation of the Eighth Amendment when Webb was leaving the hospital on August 14, 2023;

(2) **GRANTS** Albert Kelly Webb leave to proceed against Sergeant Lambert in his individual capacity for compensatory and punitive damages for being deliberately indifferent to his needs in violation of the Eighth Amendment when he deliberately switched Webb's mode of hospital transport to a non-wheelchair accessible vehicle on September 9, 2023, which caused Webb pain;

---

[5] To the extent he believes this was because he had "threatened'" to file a lawsuit, these allegations don't state a claim. *See Clark v. Reed*, 772 Fed. Appx. at 355.

(3) **GRANTS** Albert Kelly Webb leave to proceed against Officer Becker and Sergeant Lambert in their individual capacities for retaliating against him in violation of the First Amendment when they subjected him to unnecessary strip searches and/or refused to allow accommodations for his injured wrist on November 15, 2023;

(4) **DISMISSES** all other claims;

(5) **DISMISSES** Brian English, Leann Ivers, and Nathan Bates;

(6) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Becker and Sergeant Lambert at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 14);

(7) **ORDERS** the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Officer Becker and Sergeant Lambert to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 24, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT